CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 0 9 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KAREN SUE JAMES, ) | |
| Petitioner, ) | Civil Action No. 7:06-CV-00258 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| UNITED STATES OF AMERICA, ) | By: Hon. Glen E. Conrad |
| Respondent. ) | United States District Judge |

Karen Sue James, a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. The motion is presently before the court on respondent's motion to dismiss. For the following reasons, the court will grant respondent's motion.

## BACKGROUND

On January 12, 2005, James and ten other defendants were charged in a twelve-count superceding indictment returned by a grand jury in the Western District of Virginia. Count Two charged James with conspiring to cause another to travel in interstate commerce with the intent that a murder be committed, as consideration for a promise or agreement to pay things of pecuniary value, in violation of 18 U.S.C. § 1958. Count Nine charged James with possessing a firearm in furtherance of a drug trafficking crime and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).

On April 27, 2005, James pled guilty to Count Two of the indictment, pursuant to a written plea agreement. In this agreement, the United States agreed to move to dismiss Count Nine of the indictment. In exchange, James agreed to waive the right to appeal sentencing guidelines issues, as well as the right to collaterally attack her conviction or sentence under 28 U.S.C. § 2255. James also agreed to waive "any claim [she] may have for ineffective assistance

of counsel known and not raised by [her] with the court at the time of sentencing."

During the plea hearing, United States Magistrate Judge B. Waugh Crigler conducted a thorough Rule 11 colloquy. See Fed. R. Crim. P. 11. James stated under oath that she had consulted with her attorney prior to the plea hearing, that she understood the charges against her and the nature of the punishment that she potentially faced, that she had spoken with her attorney about how the Federal Sentencing Guidelines might apply in her case, that she knew she had the right to plead not guilty, and that she was giving up her right to a trial. (Tr. at 4, 5, 7, 8). James also stated that she understood all of the terms of her plea agreement, including the fact that she was waiving the "right to file a separate case sometime later called a collateral attack on either the judgment of conviction or sentence imposed by this court." (Tr. at 11). Additionally, James stated that she was satisfied with her attorney's representation, that they had received enough time to discuss any possible defenses, that there was nothing about his representation that needed to be called to the court's attention, and that no one had forced her to plead guilty. (Tr. at 12, 13). Despite all of the magistrate judge's questions, James stated that she still wanted to plead guilty. (Tr. at 13).

On May 10, 2005, the magistrate judge issued a report in which he recommended that the court accept James's guilty plea. The magistrate judge determined that James was fully competent and capable of entering an informed plea, that James was aware of the nature of the charges against her and the consequences of her plea, and that James's plea was knowing and voluntary. Neither party filed any objections to the magistrate judge's report, and it was adopted on May 25, 2005. On August 10, 2005, James was sentenced to a total term of imprisonment of 114 months.

James filed the instant § 2255 motion on April 16, 2006. The motion includes the

2

following claims:

  A. Her attorney was ineffective for failing to investigate the fact that she was on medication at the time of her confession;

  B. Her attorney was ineffective for failing to investigate the fact that agents administered her medication while she was being questioned at the local jail;

  C. Her attorney asked to be removed from the case as soon as she was sentenced and did not wait to see if she wanted to appeal; and

  D. Her attorney told the judge in another case that he was unable to be as effective as he could have, "due to the distance between himself and his clients."

Respondent filed a motion to dismiss on June 27, 2006. Since James has now filed a response to respondent's motion, the motion is ripe for review.

## DISCUSSION

### I. Claims A, B, and D

Respondent argues that James's claims must be dismissed because she waived the right to file a § 2255 motion. After thoroughly considering the parties' arguments, the court concludes that the waiver bars claims A, B, and D.

The United States Court of Appeals for the Fourth Circuit has held that a waiver of the right to collaterally attack a conviction or sentence is valid as long as the waiver is knowingly and voluntarily made. U.S. v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Having reviewed the record, the court agrees with respondent that James's guilty plea and waiver of collateral-attack rights were knowing and voluntary. During the plea hearing, James stated under oath that she had consulted with her attorney, and that she understood all of the terms of her plea agreement, including the fact that she was waiving the right to collaterally attack her conviction or sentence.

3

James also affirmed that she was satisfied with her attorney's representation, that no one had forced her to plead guilty, and that she was voluntarily giving up her right to go to trial.

"[A] defendant's solemn declarations in open court affirming [a plea] agreement ... 'carry a strong presumption of verity.'" United States v. White, 366 F.3d 291, 295 (4th Cir. 2004) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Thus, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (quoting Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975)). Since James points to no extraordinary circumstances that would refute her acknowledgment on the record that she understood all of the terms of her plea agreement, including the fact that she was waiving the right to collaterally attack her conviction or sentence, the court concludes that James's guilty plea and waiver of collateral-attack rights were knowing and voluntary. Consequently, because claims A, B, and D fall within the scope of that waiver,[1] those three claims must be dismissed.[2]

---

[1] The Fourth Circuit has recognized a narrow class of claims that fall outside the scope of a valid waiver of appellate or collateral-attack rights. Issues that a defendant could not reasonably have foreseen when entering into a plea agreement, such as the denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on an constitutionally impermissible factor such as race, fall outside the scope of the waiver. See United States v. Attar, 38 F.3d 727, 732 (4th Cir. 1994); LeMaster, 403 F.3d at 220 n. 2; United States v. Embree, 169 Fed. Appx. 761, 762 (4th Cir. 2006).

[2] The court notes that even if claims A, B, and D were not barred by the waiver, they would still be subject to dismissal. To establish a claim for ineffective assistance, a defendant must show that her attorney's performance fell "below an objective standard of reasonableness," and that the "deficient performance" must have "prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-688 (1984). In the context of a guilty plea, prejudice is established by showing "that there is a reasonable probability that but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Here, James has failed to meet that burden. There is simply no indication that, but for her attorney's alleged errors, she would have insisted on going to trial.

4

## II. Claim C

In claim C, James alleges that her attorney was ineffective, because he asked to be removed from the case as soon as she was sentenced and "did not even wait to see if [she] wanted to appeal." To the extent that this claim can be construed to suggest that James's attorney impeded her ability to file a direct appeal, the claim arguably falls outside the scope of the § 2255 waiver. See United States v. Embree, 169 Fed. Appx. 761, 762 (4th Cir. 2006) (holding that "Embree's waiver of his right to collaterally attack his sentence, coupled with his express reservation of the right to file a direct appeal, [did] not bar his claim that his attorney failed to consult with him concerning an appeal."). Therefore, the court will consider the claim on the merits.

In response to this claim, respondent submitted an affidavit from James's attorney. The affidavit states as follows:

> ...[O]n numerous occasions I thoroughly discussed and explained with Mrs. James her plea agreement in this case to include her waiver of any appeal rights, found in paragraph 9 of the plea agreement. While doing so, I also explained the process of noting a[n] appeal if she should wish to do so. Ms. James told me that she understood all the provisions of the plea agreement and that she was waiving her appeal rights, and that she understood how to note an appeal if she wished to do so. On August 10, 2005 at the sentencing hearing of this matter, U.S. District Judge Glen[] E. Conrad thoroughly explained to Ms. James her appeal rights and what she should do if she wished to note an appeal of her case. Ms. James told me at this time that she did not wish to note an appeal. Further, following her sentencing hearing, Ms. James wrote to me several times with information regarding a possible substantial assistance motion. In none of these letters did she ever mention or request any help regarding an appeal in her case.[3]

---

[3] Four letters were submitted with the attorney's affidavit. On September 19, 2005, James, in response to a letter from her attorney, advised the attorney that she had information that may be sufficient to support a Rule 35 motion. On October 13, 2005, James asked her attorney to visit her at the jail. On October 24, 2005, James complained of being treated unfairly by the jail's correctional officers and nurses. On February 10, 2006, James again complained of improper conduct at the jail. She also provided additional information regarding the identities of several drug dealers.

5

Although James again argues, in her response to the motion to dismiss, that her attorney asked to be removed from the case as soon as she was sentenced, James does not dispute her attorney's assertion that she was advised of her appellate rights and the procedure for noting an appeal. Likewise, James does not dispute her attorney's assertion that she told him that she did not want to note an appeal on the day of the sentencing hearing.

In <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000), the United States Supreme Court held that the test for ineffective assistance set forth in <u>Strickland v. Washington</u> applies to claims that counsel was ineffective for failing to file an appeal. The Supreme Court explained that in those cases where a defendant does not specifically instruct her attorney to file an appeal, "the question of whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent question: whether counsel in fact consulted with the defendant about an appeal." <u>Roe</u>, 528 U.S. at 478. The Supreme Court further explained that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner <u>only</u> by failing to follow the defendant's express instructions with respect to an appeal." <u>Id.</u> (emphasis added).

In this case, it is undisputed that James's attorney consulted with her about her appeal waiver and the procedure for noting an appeal. It is also undisputed that upon being advised of her appellate rights on the day of the sentencing hearing, James advised her attorney that she did not wish to note an appeal. Although James mailed multiple letters to her attorney after the sentencing hearing, she at no point requested appellate assistance. For these reasons, the court concludes that her attorney's performance was not constitutionally deficient under <u>Roe</u>, and that

6

claim C must be dismissed.[4]

## CONCLUSION

For the reasons stated, the court will grant respondent's motion to dismiss. The Clerk is directed to send certified copies of this opinion and the accompanying order to petitioner and counsel of record for respondent.

ENTER: This 8th day of August, 2006.

*/s/ Jackson L. Kiser*
United States District Judge

---

[4] The court notes that James has also failed to establish that she suffered any prejudice. There is simply no indication that, but for her attorney's actions, James would have timely appealed her conviction or sentence. See Roe, 528 U.S. at 484 (holding that in order to show prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with [her] about an appeal, [she] would have timely appealed). Thus, even if James had shown that her attorney's performance was deficient, claim C would still be subject to dismissal.

7